UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

**TOMOR VRLAKU**,

Plaintiff,

– against –

**ANDREW SAUL**,
Commissioner of Social Security,

Defendant.

**MEMORANDUM DECISION
AND ORDER**
1:20-CV-01011 (AMD)

**ANN M. DONNELLY,** United States District Judge:

The plaintiff appeals the Social Security Commissioner's decision that he is not disabled for the purposes of receiving disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act. For the reasons that follow, I remand this action for further proceedings.

## BACKGROUND

On August 11, 2016, the plaintiff, a 59-year-old former concrete laborer who worked at the World Trade Center in the aftermath of the 2001 terrorist attacks, applied for DIB and SSI with an onset date of May 1, 2016, because of "pulmonary disorders." (Tr. 44.) On November 26, 2018, Administrative Law Judge ("ALJ") Andrea Addison held a hearing at which the plaintiff, represented by counsel, testified. (Tr. 23-41.) In a January 9, 2019 decision, the ALJ found that the plaintiff was not disabled during the period in question. (Tr. 7-15.) The ALJ determined that the plaintiff had severe impairments including a chronic respiratory disorder and left knee tendinosis, but that he was not disabled because his impairments were not severe enough to meet or medically equal the severity of the criteria listed in the Social Security regulations. (Tr. 9-10.) Finally, the ALJ determined that the plaintiff had the residual functional

capacity ("RFC") to perform medium work with some limitations, and that he could perform jobs that existed in the national economy.  (Tr. 10-14.)

The plaintiff appealed, and on December 23, 2019, the Appeals Council denied his request for review.  (Tr. 1-3.)  The plaintiff filed this action, and both parties moved for judgment on the pleadings.  (ECF Nos. 8, 10.)

## LEGAL STANDARD

A district court reviewing the Commissioner's final decision is limited to determining "whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quoting *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009)).  The Court must uphold the Commissioner's factual findings if there is substantial evidence in the record to support them.  42 U.S.C. § 405(g).  "Substantial evidence is 'more than a mere scintilla' and 'means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).  "Although factual findings by the Commissioner are 'binding' when 'supported by substantial evidence,' '[w]here an error of law has been made that might have affected the disposition of the case,'" the court will not defer to the ALJ's determination.  *Pollard v. Halter*, 377 F.3d 183, 188-89 (2d Cir. 2004) (quoting *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984) (internal citations omitted)).  Thus, "[e]ven if the Commissioner's decision is supported by substantial evidence,

legal error alone can be enough to overturn the ALJ's decision." *Ellington v. Astrue*, 641 F.

Supp. 2d 322, 328 (S.D.N.Y. 2009) (quoting *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir.

1987)).

## DISCUSSION

The plaintiff challenges the ALJ's RFC determination, alleging that it was not supported

by substantial evidence because the ALJ did not weigh the medical opinions properly or apply

the relevant legal standards. (EFC No. 8 at 7.) The defendant responds that the ALJ committed

no legal error, and that her decision is supported by substantial evidence. (EFC No. 10 at 5.) As

explained below, remand is warranted because the ALJ did not sufficiently explain why she

concluded that the treating physician's opinion did not merit controlling weight. In addition, the

ALJ's RFC determination was not supported by substantial evidence.

## I.     The Treating Physician Rule

The record includes the opinions of two doctors—Dr. Namola Manohar, an internist who

has treated the plaintiff since 2002, and Dr. Emmanuel Gelin, a consultative examiner who

examined the plaintiff once in 2016. The "treating physician" rule requires the ALJ to give "a

treating source's opinion on the issue(s) of the nature and severity" of a claimant's impairment

"controlling weight" if the opinion is "well supported by medically accepted clinical and

laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in

[the claimant's] case record." *Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003)

(citing 20 C.F.R. § 404.1527(d)(2) and *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000)).

When an ALJ does not give a treating physician's opinion controlling weight, she must

"comprehensively set forth [her] reasons for the weight assigned to the treating physician's

opinion." *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008) (citations and alterations omitted).

Failing to give "good reasons" for the weight assigned to a treating physician's opinion is grounds for remand. *See Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004) ("We do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician's opinion . . . .").

Consultative examiner Dr. Emmanuel Gelin examined the plaintiff once, on October 3, 2016.  (Tr. 232-38.)  He diagnosed the plaintiff with a history of "mild to moderate chronic obstructive pulmonary disease with no home oxygen use," "chronic back pain," "gastroesophageal reflux disease" and "seasonal allergic rhinitis," and described the plaintiff's prognosis as "fair to good."  (Tr. 234.)  Dr. Gelin concluded that the plaintiff had "diffuse rhonchi at the bases of both lungs," but that his motor system, sensory systems, reflexes and range of motion in his back and joints were all "normal."  (Tr. 233-34.)  Dr. Gelin opined that the plaintiff had no limitations in sitting, standing, walking, or lying down and "no weight restrictions."  (Tr. 234.)

In stark contrast, Dr. Manohar, the plaintiff's primary care physician since 2002, found that the plaintiff had severe functional limitations.  In a November 23, 2018 letter, Dr. Manohar stated that the plaintiff suffered from "arthritis of the spine," "arthritis of the knees," "plantar [fasciitus]" and "severe lung injuries" caused by exposure to dust from the World Trade Center where he worked for a year removing debris after the September 11, 2001 terrorist attacks. (Tr. 255.)  She opined that the plaintiff was "severely disabled" and "unable to return to any kind of work."  (*Id*.)  A few weeks later, on December 11, 2018, Dr. Manohar completed a medical source statement in which she opined that the plaintiff could lift less than 10 pounds "occasionally" and stand and/or walk less than two hours due to "lumbosacral/knee osteoarthritis" and "severe lung disease."  (Tr. 266-67.)  She could not assess the plaintiff's

4

ability to lift any weight "frequently" because of his severe lung disease (Tr. 266), nor could she assess his ability to push or pull or sit for long periods of time (Tr. 267).

The ALJ did not give controlling weight to either medical opinion.  She gave "some" weight to Dr. Gelin's opinion, but expressed skepticism at his "no limitations" finding because the "same day examination revealed abnormalities that would cause [the plaintiff] some exertional limits."  (Tr. 12.)  She also cited Dr. Gelin's finding that the plaintiff's lungs were "primarily normal," despite the diffuse rhonchi at the base of his lungs—an abnormality that "would cause him at least minimal limitations in performing exertional activities."  (*Id*.)

The ALJ gave "little" weight to both of Dr. Manohar's opinions.  (Tr. 12.)  She correctly discounted Dr. Manohar's November 23, 2018 opinion that the plaintiff was "severely disabled," as that conclusion is reserved for the Commissioner of Social Security.  20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1); *see also Trepanier v. Comm'r of Soc. Sec. Admin.*, 752 F. App'x 75, 77 (2d Cir. 2018) ("A bald statement that a claimant is 'disabled' represents an administrative finding, not a medical opinion."); *Micheli v. Astrue*, 501 F. App'x. 26, 28 (2d Cir. 2012) ("[I]t is the responsibility of the Commissioner to make the ultimate decision as to whether the claimant has a 'disability' under the statute.").  In addition, the ALJ appropriately concluded that the November 23rd opinion was not entitled to controlling weight because it was "ambiguous with respect to specific exertional functions."  *See Halloran*, 362 F.3d at 32 (the treating physician's opinions did not merit controlling weight because they were "not particularly informative").

The ALJ also assigned "little" weight to Dr. Manohar's December 11, 2018 opinion that the plaintiff could lift less than 10 pounds occasionally and stand and/or walk less than two hours in an eight-hour workday.  (Tr. 12.)  The ALJ found that Dr. Manohar did not "offer a complete

assessment of the [plaintiff's] abilities," and that her opinion was "not supported by records detailing the [plaintiff's] minimal musculoskeletal treatment." (*Id.*) The ALJ concluded that the plaintiff's knee surgery "[had] not significantly limited his ability to stand or walk or lift," and that he was "capable of performing these activities at a medium exertional level." (*Id.*)

The record largely supports the ALJ's conclusion that the plaintiff's left knee surgery was not disabling by itself. (Tr. 256-61.) But Dr. Manohar did not base her findings about the plaintiff's functional limitations on his knee surgery; she found that the combined effects of the osteoarthritis in his back and knees and his severe lung disease caused his serious functional limitations. (Tr. 267.) These conditions, discussed in detail below, are well documented in the record. (*See* Tr. 226-29, 232, 248-49, 252, 254, 257, 260.) The ALJ did not specify anything in the record that contradicted or undermined Dr. Manohar's conclusions about walking, standing and lifting, nor did she appear to take into account Dr. Manohar's long treating relationship with the plaintiff.

An ALJ is not permitted to discount a treating physician's opinion merely because it is incomplete. *See Ocasio v. Barnhart*, 2002 WL 485691, at *8 (E.D.N.Y. 2002). Rather, "[i]f the ALJ is not able to fully credit a treating physician's opinion because the medical records from the physician are incomplete or do not contain detailed support for the opinions expressed, the ALJ is obligated to request such missing information from the physician." *Calzada v. Astrue*, 753 F. Supp. 2d 250, 277-78 (S.D.N.Y. 2010) (citing *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996)); *see also Shaw*, 221 F.3d at 134 ("For the ALJ to conclude that plaintiff presented no evidence of disability at the relevant time period, yet to simultaneously discount the medical opinion of his treating physician, violates [her] duty to develop the factual record[.]"). The reasons that the ALJ cited for giving Dr. Manohar's December 11, 2018 opinion less than

6

controlling weight—that the opinion was "incomplete" and "inaccurate"—are not "good reasons" under the treating physician rule because they are not supported by the record.  Thus, the case must be remanded so that the ALJ can reevaluate the opinion evidence and develop the record further if necessary.

## II.    The RFC Determination

Remand is also warranted because the ALJ's RFC determination is not supported by substantial evidence.  A plaintiff's residual functional capacity is "the most [he] can still do despite [his] limitations."  20 C.F.R. §§ 404.1545, 416.945.  "[A]n ALJ must assess a claimant's exertional capabilities—which includes the ability to stand and carry—based on 'all of the relevant medical and other evidence[.]'"  *Sanders v. Comm'r of Soc. Sec.*, 506 F. App'x 74, 77 (2d Cir. 2012) (summary order) (quoting 20 C.F.R. § 404.1545(a)(3)); *see also Colegrove v. Comm'r of Soc. Sec.*, 399 F. Supp. 2d 185, 192 (W.D.N.Y. 2005) (citing 20 C.F.R. §§ 404.1545(a), 416.945(a)) ("It is the responsibility of the ALJ to assess [the] plaintiff's residual functional capacity, based on all the relevant evidence in the case record.").  Moreover, the ALJ "must discuss the relevant evidence and factors crucial to the overall determination with sufficient specificity to enable reviewing courts to decide whether its determination is supported by substantial evidence."  *Estrada ex rel. E.E. v. Astrue*, No. 08-CV-3427, 2010 WL 3924686, at *3 (E.D.N.Y. Sept. 29, 2010) (quoting *Ramos v. Barnhart*, No. 02-CV-3127, 2003 WL 21032012, at *7 (S.D.N.Y. May 6, 2003)).  "[F]ailure to specify the basis for a conclusion as to residual functional capacity is reason enough to vacate a decision of the Commissioner."  *Lecler v. Barnhart*, No. 01-CV-8659, 2002 WL 31548600, at *6 (S.D.N.Y. Nov. 14, 2002) (citing *White v. Sec'y of Health and Human Servs.*, 910 F.2d 64, 65 (2d Cir. 1990)).

The ALJ found that the plaintiff could work at the medium exertional level, meaning that he could lift 50 pounds occasionally, and frequently lift or carry objects that weigh up to 25 pounds, as well as stand and/or walk for six hours in a shift. *See* 20 C.F.R. §§ 404.1567(c) & (b), 416.967(c) & (b) ("If someone can do medium work, we determine that he or she can also do sedentary and light work."); *see also Trepanier*, 752 F. App'x at 79 (quoting S.S.R. 83-10, 1983 WL 31251, at *6 (January 1, 1983)) ("'[b]eing able to do frequent lifting or carrying of objects weighing up to 25 pounds is often more critical than being able to lift up to 50 pounds at a time' for medium work"). The plaintiff's counsel represented that the plaintiff could perform some "light" work (Tr. 27), but there is no evidence in the record that the plaintiff could lift 50 pounds occasionally or 25 pounds frequently.[1]

As discussed above, only two doctors evaluated the plaintiff's functional limitations, and they contradicted each other. Although an ALJ is allowed to resolve conflicts in the medical evidence, *see Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002), her determination must be supported by substantial evidence in the record, 42 U.S.C. § 405(g); *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). She cannot ignore portions of the record that contradict her determination or substitute her opinion for a treating physician's. *Rosa v Callahan*, 168 F3d 72, 79 (2d Cir. 1999) (quoting *McBrayer v. Sec'y of Health and Human Servs.*, 712 F.2d 795, 799

---

[1] Given the plaintiff's age, education and prior work experience, he would be considered disabled if he could not perform work at the medium exertion level. 20 C.F.R. §§ 404.1568(d), 416.968(d). The ALJ determined that the plaintiff (who was 61 on the date of the hearing) was "closely approaching retirement," and that he had a limited (less than high school) education. (Tr. 13.) Light work is the category just below medium work, and means that a person can lift no more than 20 pounds occasionally and frequently lift and carry objects up to 10 pounds, as well as walk and stand up to six hours a day. If the ALJ concluded that the plaintiff could do light work, the grid regulations would have dictated a finding that plaintiff was disabled because of his lack of transferable skills. *See* 20 C.F.R. § 404, Subpt. P, App. 2 at § 202.01; *Calzada*, 753 F. Supp. 2d at 281.

(2d Cir. 1983)) ("the ALJ cannot arbitrarily substitute [her] own judgment for competent medical opinion").

The plaintiff testified consistently that he could not lift more than ten pounds or walk or stand for long periods of time without experiencing shortness of breath.  (Tr. 31-35, 183, 232). The ALJ determined that the record does not support his testimony because of the evidence that he continued working for fifteen years after his World Trade Center job, because his lung examinations and spirometry readings reflect mostly normal or mild limitations, because he did not have COPD attacks, hospital visits or oxygen therapy, and because he could "testify clearly without any breathing issues."  (Tr. 12.)  The record does not support these conclusions.

First, the record documents the plaintiff's lung condition.  As Dr. Gelin reported, the plaintiff was hospitalized at Mount Sinai Hospital for a week for a lung infection after he stopped working at the World Trade Center site.  (Tr. 232).  Doctors diagnosed the plaintiff with Chronic Obstructive Pulmonary Disease ("COPD") and prescribed various inhalers to manage his symptoms.  (*Id.*)  A January 23, 2010 CT scan revealed a mass in the plaintiff's left lung (Tr. 248-49), and in November of 2011, the plaintiff had a left lung lobectomy to treat non-small cell lung cancer.  (Tr. 228.)  Although subsequent CT scans of his lungs showed no significant changes after the surgery (Tr. 226-29), he continued to complain regularly of shortness of breath and a persistent chronic cough (Tr. 225, 232, 257, 260).  The plaintiff testified at the hearing that he uses an asthma pump regularly and that he has used a nebulizer every day, three times a day, for the past three years.  (Tr. 31.)  Moreover, the ALJ's assertion that the plaintiff "testif[ied] clearly without any breathing issues" does not comport with the record.  (Tr. 12.)  The plaintiff coughed frequently during the hearing and had to use his inhaler, prompting the ALJ to comment

that he had been "coughing like every sentence," and to ask if that was normal or if his cough was worse that day.  (Tr. 33-34.)

The plaintiff also testified that he could lift only five to six pounds, walk one or two blocks, and stand for five minutes because of his back pain.  (Tr. 33.)  This testimony is consistent with the plaintiff's complaints, just a few weeks before the hearing, of acute lower back pain for which Dr. Chitoor Govindaraj prescribed pain medications, including the narcotic Tramadol.  (Tr. 252, 254.)  Dr. Gelin also noted that the plaintiff suffered from chronic back pain during his 2016 examination (Tr. 232), and Dr. Deepak Vandan diagnosed the plaintiff with arthritis in his right knee during a July 25, 2017 visit (Tr. 257)—a diagnosis echoed by Dr. Manohar in her November 23, 2018 report (Tr. 255).

Despite this recent evidence of back pain and Dr. Manohar's diagnosis of lumbosacral osteoarthritis as a reason for her severe limitation on the plaintiff's ability to lift, the ALJ did not mention the plaintiff's back pain in her RFC determination.  Other than Dr. Gelin's internally inconsistent opinion that the plaintiff had "no weight restrictions," there is no evidence to support a finding that the plaintiff could lift 50 pounds.  The ALJ's conclusion that the plaintiff could perform work at a medium level is not supported by the evidence in the record.  Thus, remand is warranted.[2]

---

[2] The plaintiff did not challenge the ALJ's assessment of his subjective symptoms.  However, on remand, the ALJ should reassess the plaintiff's subjective symptoms in light of the record as a whole and in accordance with 20 CFR §§ 404.1529(c)(3), 416.929(c)(3).  *See* S.S.R. 16-3p, 2016 WL 1119029 (Mar. 16, 2016).

## CONCLUSION

The plaintiff's motion for judgment on the pleadings is granted.  The Commissioner's motion for judgment on the pleadings is denied.  The case is remanded for further proceedings consistent with this opinion.

**SO ORDERED.**

    s/Ann M. Donnelly
ANN M. DONNELLY
United States District Judge

Date:  Brooklyn, New York
      March 5, 2021